# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MELCHOR/PLATA-FIGUEROA/
RIVERA/MCCAULLEY, Minors.

UNPUBLISHED
January 10, 2017

No. 332665
Oakland Circuit Court
Family Division
LC No. 2015-834055-NA

*In re* A.E. MCCAULLEY, Minor.

No. 332672
Oakland Circuit Court
Family Division
LC No. 2015-834055-NA

*In re* A.D. MCCAULLEY, Minor.

No. 332725
Oakland Circuit Court
Family Division
LC No. 2015-834543-NA

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

PER CURIAM.

In Docket No. 332665, respondent mother, DPF, appeals as of right the orders terminating her parental rights to her children, MM, LM, OPF, JR, and AEM, pursuant to MCL 712A.19b(3)(b),[1] (g), (j), and (k)(*iii*). DPF is the mother of all five children. MM, LM, and OPF have the same father, who is not a respondent. JR's father also is not a respondent. AEM's father is CM. In Docket No. 332665, respondent father, CM, appeals as of right the order terminating his parental rights to his child, AEM, pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j),

---

[1] The trial court found statutory grounds for terminating DPF's parental rights to all five of her children under MCL 712A.19b(3)(b)(*i*) & (3)(b)(*ii*) and to MM, LM, OPF, and JR under MCL 712A.19b(3)(b)(*iii*).

-1-

and (k)(*iii*).  In Docket No. 332725, CM appeals as of right the order terminating his parental rights to his child, ADM, pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j).[2]  ADM's mother is not a respondent.  We affirm.

Petitions were filed after evidence revealed that JR was severely abused over the weekend of July 31 to August 2, 2015 during which time DPF and CM were the only adults to have contact with JR.  During that weekend, DPF and her two youngest children, JR and AEM, were at CM's apartment with CM and his child, ADM.  The following Monday, DPF's mother discovered a severe rectal burn on JR.  DPF's mother called DPF, and when DPF arrived, JR told her that CM had burned him.  JR was taken to the hospital, and, after being seen at the emergency room, was evaluated by a child abuse pediatrician, Dr. Mary Smyth.  Dr. Smyth's examination revealed that JR had a partial thickness burn on his rectum that extended beyond the top layer of skin into the deeper layers.[3]  JR was also forensically interviewed on August 11, 2015 where he disclosed that CM had burned him with a lighter.

A jurisdictional trial and dispositional hearing were held on the petitions over several days.  During those proceedings, the trial court heard extensive testimony from Amanda Fritz, the forensic interviewer; Dr. Smyth; DPF's oldest two daughters, LM and MM; Oakland County Sheriff Deputy Christina Maher; CPS investigator Jennifer Anderson; DPF; and CM.  The trial court also received photographs of JR's injuries taken by Dr. Smyth during her examination. The trial court found that it had jurisdiction over the children and terminated respondents' parental rights to their respective children.

In Docket No. 332665, DPF argues that the trial court erred in failing to hold separate adjudicative and dispositional hearings.  We conclude that DPF waived this argument.  "[A] waiver is a voluntary and intentional abandonment of a known right."  *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003).  DPF's counsel expressly agreed to having the best interests issue be litigated and decided in the same hearing as the jurisdictional trial and termination hearing.[4]  DPF fully participated without objection in the

---

[2] All three appeals were consolidated to advance the efficient administration of the appellate process.  *In re Melchor/Plata-Figueroa/Rivera/McCaulley Minors*, unpublished order of the Court of Appeals, entered May 10, 2016 (Docket Nos. 332665; 332672; 332725).

[3] Dr. Smyth testified that the partial thickness burn would be consistent with what would previously have been considered a second degree burn, although such terms are no longer widely used.

[4] The trial court specifically asked the parties if they were anticipating having a separate best interest hearing, to which DPF's counsel stated "I would ask the Court to incorporate any of the testimony that's been given for best interest as well" and also stated "I have no objection to rolling right into best interest if that becomes necessary."  The Court then again asked, "So your position would be that this matter would include the best interest hearing and, therefore, at the end the Court would be making a decision on best interest as well as the other matters?"  DPF's counsel replied, "Yes, your Honor."  DPF's counsel even sought DPF's agreement on the issue

single hearing extending over multiple days that addressed both the adjudicative and dispositional phases. Her counsel cross-examined all witnesses and presented a closing argument addressing both the adjudicative and dispositional phases. "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). See also *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Even if the issue had not been waived, the issue is unpreserved, and DPF has not demonstrated a plain error that affected her substantial rights.[5] DPF claims that the failure to hold separate adjudicative and dispositional hearings denied her constitutional right of due process, citing *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009), for the general proposition that due process entails an opportunity to be heard at a meaningful time and in a meaningful manner. DPF also cites *In re AMAC*, 269 Mich App 533; 711 NW2d 426 (2006) for the proposition that a combined adjudicative and dispositional hearing is improper. DPF's reliance on *In re AMAC* is misplaced. In that case, a trial or adjudicative hearing was held during which the parties made reference to a possible future best interest hearing at which witnesses would be called who did not testify at the adjudicative hearing. *Id.* at 535. At the conclusion of the adjudicative hearing, the trial court issued a written opinion and order terminating the respondent's parental rights without having held a dispositional hearing. *Id.* at 535, 538. We held that the trial court erred in failing to afford the respondent her right to a dispositional hearing and so vacated the order terminating the respondent's parental rights and remanded for a dispositional hearing. *Id.* at 538-541. In this case, by contrast, the parties agreed to litigate the best interests issue in the same hearing as the adjudicative hearing, and DPF was not denied the opportunity to be heard on the dispositional phase. DPF's counsel expressly advised the trial court that he was questioning witnesses on issues pertaining to the best interests of the children, and his closing argument addressed both the adjudicative and dispositional phases of the proceeding. Also, the trial court's written opinion and order separately addressed the adjudicative and dispositional phases of the proceeding and made the requisite determinations for each phase under the governing legal standards. DPF has not shown that she was denied her constitutional right to due process.

Next, in all three appeals, respondents present general arguments challenging the trial court's admission of Fritz's recounting of JR's statements to her. We conclude that the trial

---

stating in reference to DPF "she has no objection . . . to go forward with best interest as it is. Is that correct, ma'am?" DPF herself replied "Correct."

[5] An issue must be raised before the trial court in order to be properly preserved for appellate review. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). DPF did not object below to the failure to hold separate adjudicative and dispositional hearings, thereby failing to preserve the issue. Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009). An error is deemed to affect substantial rights if it caused prejudice by affecting the outcome of the proceedings. *In re Utrera*, 281 Mich App at 9.

court did not commit error in admitting JR's forensic statements.[6]  When termination of parental rights is sought at the initial dispositional hearing, the statutory grounds for termination must be established by clear and convincing legally admissible evidence.  MCR 3.977(E)(3).  Notwithstanding the general rules against the admission of hearsay evidence, MRE 801 & 802, MCR 3.972(C)(2) provides, in relevant part:

> Any statement made by a child under 10 years of age . . . regarding an act of child abuse . . . performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness.  This statement may be received by the court in lieu of or in addition to the child's testimony.

"The reliability of a statement depends on the totality of the circumstances surrounding the making of the statement.  Circumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *In re Archer*, 277 Mich App 71, 82; 744 NW2d 1 (2007) (citation omitted).

The totality of the circumstances surrounding JR's forensic statement provided adequate indicia of trustworthiness.  JR, three and a half years old at the time, was interviewed by Amanda Fritz, who was deemed qualified without objection as an expert in forensic interviewing.  Fritz testified that JR made unsolicited and spontaneous disclosures of abuse multiple times, consistently saying that CM had "whooped" and burned him.  Fritz described how JR made a motion and sound consistent with a lighter to indicate how CM had burned him.  Fritz had no concerns that there were any competency issues in her forensic interview of JR.  After determining that JR knew the difference between the truth and a lie, Fritz asked JR if the things he had described so far had really happened, to which JR responded in the affirmative.  Fritz testified that JR was informed that he should correct Fritz if she said something wrong in summarizing what he said and that JR corrected her several times.  Fritz also testified that JR described various other abuses, aside from the rectal burn, that he suffered at the hands of CM including statements of how CM burned his arm, pinched his penis, and burned his ear.

---

[6] A trial court's evidentiary determinations are reviewed for an abuse of discretion, but preliminary questions of law such as the interpretation of a statute or court rule are reviewed de novo.  *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007).  A trial court abuses its discretion if its decision falls outside the range of principled outcomes.  *In re Utrera*, 281 Mich App at 15.

JR's statements concerning the abuse inflicted on him were also corroborated by photographs of his injuries, which were admitted as exhibits, and by the testimony of Dr. Smyth. Dr. Smyth testified that the severe burn to JR's rectum was consistent with the use of a lighter and that the location of the burn would have required JR's buttocks to be spread open in order to inflict it. There was no indication that JR suffered a mental deficiency or that he had a motive to fabricate the elaborate and heinous type of abuse he described. Moreover, MM and LM both testified to witnessing incidents where CM choked JR and put soap in his mouth. Overall, the trial court's decision to admit JR's statements to the forensic interviewer fell within the range of principled outcomes.

In unpreserved arguments, respondents each assert that the trial court erred in failing to view, and admit at the motion hearing, the video recording of the forensic interview of JR.[7] We agree with respondents that the trial court plainly erred in failing to view or admit the video recording. MCL 712A.17b(5) provides, in pertinent part, that "[t]he video-recorded statement shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness." In *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 632; 853 NW2d 459 (2014) (*In re Brown Minors*), we held that the statutory language "requires a trial court to admit video-recordings of a child's forensic interview during a non-adjudicatory stage – here, a tender-years hearing." In that case, we determined that the trial court had erred by failing to admit the video recordings of the children's statements at the evidentiary hearing on the motion to admit the statements. *Id*. at 633. We conclude, however, that given the particular facts and overwhelming evidence in this case, that this error was harmless as it would not have altered the outcome of the proceedings. There was prodigious evidence, independent of JR's forensic statements, regarding the severe abuse inflicted on JR over the weekend of July 31 to August 2, 2015, during which respondents were the only adults to have contact with JR. Dr. Smyth testified that the location of the wound on JR's rectum would have required someone to spread his buttocks cheeks to inflict the burns and that JR had no injuries consistent with a struggle such as smaller burns indicating that JR was restrained while the burn was inflicted. Dr. Smyth testified that she did not know how one individual would have been able to spread JR's buttocks, hold him down, and apply the lighter. Additionally, Deputy Maher testified that in DPF's statement to police she admitted to seeing a lighter in CM's hand and that she pulled down JR's pants. There was never any suggestion that any other adult, other than DPF and CM, had contact with JR during the weekend when he received the rectal burn. Despite the strong evidence of this abuse, both Deputy Maher and CPS investigator Anderson testified that respondents denied

---

[7] An issue must be raised before the trial court in order to be properly preserved for appellate review. *In re Utrera*, 281 Mich App at 8. Respondents did not ask the trial court to view or admit the video recording of JR's forensic interview or otherwise raise this issue below. Hence, the issue is unpreserved. Unpreserved issues are reviewed for plain error affecting substantial rights. *Id*. An error affects substantial rights if it causes prejudice by affecting the outcome of the proceedings. *Id*. at 9. Whether a trial court must admit a video recording of a forensic interview is reviewed de novo as an issue of statutory interpretation. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 630; 853 NW2d 459 (2014).

-5-

knowledge of the rectal burning, gave no explanation for its presence, or attempted to explain the injury as being caused by a "wedgie."

There was also evidence of CM's escalating acts of aggression and violence directed at DPF and JR including when the other children were present and of DPF's continuing exposure of the children to CM despite her knowledge of his ongoing abusive behavior. Dr. Smyth testified that she found lesions consistent with cigarette burns on JR's shoulder and groin region and that she found linear bruising on his hip consistent with being struck by an object. CM acknowledged that he had pleaded guilty to third-degree home invasion related to a fight with the boyfriend of ADM's mother in ADM's presence. CM admitted that he had put soap in ADM's mouth. LM testified to witnessing previous incidents of CM assaulting both JR and DPF. MM also testified about domestic violence between DPF and CM and about a previous incident where CM had choked JR. Both LM and MM testified to in the past observing marks indicative of abuse on DPF.

There was also evidence of CM's long history of abusing multiple types of drugs including evidence of such abuse on the weekend when JR was burned. Deputy Maher testified that DPF acknowledged to her that CM had ongoing issues with heroin addiction. DPF testified that CM had a problem abusing heroin, marijuana, and prescription drugs. DPF specifically recalled seeing CM locked in a bedroom with his daughters while a needle was right next to him during the same weekend that JR suffered his rectal burn. CM himself acknowledged that he had had problems abusing heroin, marijuana, and prescription drugs. However, CPS investigator Anderson testified that she was not informed of CM's heroin problem until trial.

Despite the prior abuse and knowledge of CM's substance problems, DPF continued to expose her children to CM by bringing JR and AEM to CM's apartment during the weekend that JR was burned. At the trial, DPF testified that she would not object to CM having supervised visits with AEM and that she believes CM is a good father to AEM. DPF acknowledged going to CM's residence for sex several months after JR's injuries were discovered. After CM got out of rehab in December of 2015, DPF said she and CM continued talking "as friends" and because CM was AEM's father. CPS investigator Anderson, who was the last witness to testify, also testified that DPF told her in an interview that she had apologized to CM for putting him through this and noted that during the entire trial CM and DPF chose to sit next to each other. DPF placed her desire to be with CM above the needs of her children, and this failure to protect her children culminated in the heinous abuse of JR. Therefore, even absent the testimony of the forensic interviewer, the outcome of the proceedings would have been the same.

DPF further argues that the trial court failed to provide a sufficiently comprehensive ruling explaining which of JR's statements were being admitted. But the trial court in fact provided a detailed ruling that sufficiently articulated its reasoning and made amply clear that it was admitting all of JR's statements from the forensic interview. DPF also asserts that it was improper for the trial court to proceed to the adjudicatory phase of the hearing before ruling on the admissibility of JR's statements and that it was improper to incorporate the testimony regarding the statements from the motion hearing into the trial in lieu of calling the witnesses to testify again at the trial. However, DPF's counsel expressly agreed below to the very actions that DPF now challenges on appeal. DPF has thus waived her arguments on these points, thereby eliminating any error. *The Cadle Co*, 285 Mich App at 255.

Next, in all three appeals, respondents present arguments challenging the trial court's findings that statutory grounds for termination of respondents' respective parental rights were established by clear and convincing evidence. We conclude that the trial court did not clearly err in finding that statutory grounds for termination were satisfied for each respondent.[8]

"Termination of parental rights is appropriate when the D[H]HS proves one or more grounds for termination by clear and convincing evidence." *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012) (citations omitted). "[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011).

The first grounds for termination at issue here are MCL 712A.19b(3)(b)(*i*) & (3)(b)(*ii*). The trial court found that termination of DPF's parental rights to all five of her children was appropriate under MCL 712A.19b(3)(b)(*i*) & (3)(b)(*ii*), and that termination of CM's parental rights to both of his children, AEM and ADM, was appropriate under MCL 712A.19b(3)(b)(*i*). The statutory language provides that termination is appropriate if:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

Termination of parental rights under MCL 712A.19b(3)(b)(*i*) and (*ii*) "is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011).

There was evidence that JR suffered a severe rectal burn during the weekend of July 31 through August 2, 2015, during which respondents were the only adults to be alone with him. The evidence we have outlined in this opinion regarding JR's statements to the forensic

---

[8] This Court reviews for clear error a trial court's decision that a ground for termination has been proven by clear and convincing evidence. MCR 3.977(K). A decision of the trial court is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

interviewer, Dr. Smyth's testimony regarding the severe burns observed on JR's rectum as well as marks of abuse elsewhere on his body corroborating such statements, and MM's and LM's testimony regarding CM's past abuse sufficiently established that CM abused JR and that DPF either aided in the abuse or had the opportunity to prevent the abuse and failed to do so.

Further, there was a reasonable likelihood that the children would suffer from injury or abuse in the foreseeable future if returned to respondents given the testimony of Deputy Maher and CPS investigator Anderson that respondents had failed to accept accountability or to express realization of the seriousness of the abuse inflicted. Respondents' treatment of JR is pertinent in evaluating the potential risk posed by respondents to JR's siblings. *In re Hudson*, 294 Mich App at 266. Termination was therefore appropriate on the basis of MCL 712A.19b(3)(b)(*i*) and (*ii*) for DPF with respect to all five of her children and on the basis of MCL 712A.19b(3)(b)(*i*) for CM with respect to AEM.[9]

The trial court also did not err in finding that termination of DPF's parental rights to all of her children, except for AEM, was appropriate under MCL 712A.19b(3)(b)(*iii*), which provides that termination is proper if a child or a sibling has suffered physical abuse and "[a] nonparent adult's act caused the physical . . . abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home." CM was a nonparent adult as to all of DPF's children except AEM, and he caused physical injury or abuse to JR and there was a reasonable likelihood that the children would suffer from injury or abuse by CM in the foreseeable future if placed in DPF's home.

The trial court also found grounds for termination of DPF's parental rights to all five of her children and of CM's parental rights to both of his children under MCL 712A.19b(3)(g) & (3)(j). MCL 712A.19b(3)(g) requires a court to find by clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(j) requires a court to find by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Termination under both MCL 712A.19b(3)(g) & (3)(j) "is permissible even in the absence of determinative evidence regarding the identity of the perpetrator [of child abuse] when the evidence shows that the respondents must have either caused the intentional injuries or failed to safeguard the children from injury." *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412

---

[9] Because ADM is not a sibling of JR, termination of CM's parental rights to ADM is not appropriate on the basis of MCL 712A.19b(3)(b), as petitioner acknowledges. The trial court's opinion and order incorrectly cited MCL 712A.19b(3)(b)(*i*) as a ground for termination of CM's parental rights to ADM. This error was harmless because only one statutory ground need be established by clear and convincing evidence and, as discussed later, the trial court properly concluded that termination of CM's parental rights to ADM was warranted under MCL 712A.19b(3)(g) and (j). *In re Laster*, 303 Mich App 485, 495; 845 NW2d 540 (2013).

(2011). The evidence outlined in this opinion regarding the extensive abuse JR suffered at the hands of CM and DPF, CM's repeated drug abuse, CM's history of domestic violence, DPF's continued exposure of her children to CM after knowing of the drug use and experiencing the domestic violence, and DPF's continued involvement in a sexual relationship with CM even after JR's rectal burn sufficiently support the trial court's finding that a statutory basis existed to terminate the parental rights of each respondent to all of their respective children under MCL 712A.19b(3)(g) & (3)(j).

The trial court also found that termination of DPF's parental rights to all five of her children and of CM's parental rights to AEM was supported by MCL 712A.19b(3)(k)(*iii*), which allows a court to terminate parental rights if "[t]he parent abused the child or a sibling of the child and the abuse included . . . [b]attering, torture, or other severe physical abuse." Termination under this provision "is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *In re Ellis*, 294 Mich App at 35-36. Again, there was strong evidence in the form testimony from the Fritz, Dr. Smyth, Deputy Anderson, MM, LM, Deputy Maher, and CPS investigator Anderson that all pointed to severe physical abuse, if not torture, that JR suffered at the hands of CM. The evidence also provided strong circumstantial indicia that DPF actively assisted CM. The trial court's findings on MCL 712A.19b(3)(k)(*iii*) were not clearly erroneous.

Finally, in Docket No. 332665, DPF argues that the trial court clearly erred in finding that termination of her parental rights was in the best interests of each of her children. We disagree.[10] "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (quotation marks and citations omitted). "The trial court may also consider a parent's history of domestic violence . . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). A child's placement with relatives weighs against termination, and the fact that a child is living with relatives is a factor to be considered in determining whether termination is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 43.[11]

The trial court engaged in an exhaustive and detailed analysis considering each child separately, and the evidence fully supports the trial court's finding that termination was in the best interests of each child. The court considered DPF's bonds with the older children and each child's current placement but ultimately concluded that these factors were outweighed by each child's need for stability and permanency and by DPF's consistent failure to protect her children

---

[10] This Court reviews the trial court's best-interest determination for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

[11] A "relative" for this purpose includes a grandparent but not a parent. MCL 712A.13a(1)(j).

from a volatile and dangerous environment.[12]  The trial court's best-interests findings were not clearly erroneous.

We affirm in all three appeals.

/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro

---

[12] For example, the trial court noted that MM and LM both had strong bonds with DPF but that neither wished to have contact with DPF if she continued to maintain a relationship with CM. The trial court expressed concern about what would happen to MM, LM, and OPF should their father pass away and DPF continue to have parental rights to them.  The trial court also expressly noted the fact that JR and AEM were placed with their maternal grandparents but concluded that given the extensive abuse JR suffered at CM's hands, DPF's presence during such abuse, and DPF's expressed desire to continue to have CM be a part of AEM's life, that termination was still in both children's best interests.  We also note that since the trial court's decision, MM has turned 18 years old.